## DECLARATION of PETER ARDISSONO

I, Peter Ardissono, do hereby declare:

### BACKGROUND/EXPERIENCE

1.  I have been employed as a Special Agent (SA) by the Drug Enforcement Administration (DEA) since 2019. Prior to this, I was a U.S. Customs and Border Protection Officer in Brownsville, Texas, from 2012 to 2013 and served in the U.S. Marine Corps from 2014 to 2019. My current assignment is the Eugene Resident Office. My job assignment includes, but is not limited to, the investigation of violations of 21 U.S.C. §§ 841, 846, and 856, which includes the detection, identification, and apprehension of those individuals involved in controlled substance trafficking offenses. My training and experience include completion of DEA basic training including the investigation, detection, and identification of controlled substances and conspiracy and complex investigations training. Additionally, I have participated in numerous narcotics investigations since my employment with the DEA as a case agent and surveillance agent. I have consulted and conversed with numerous other agents from various local, state, and federal agencies on drug cases, including the distribution of heroin, cocaine, methamphetamine, fentanyl, marijuana, and other controlled substances. I have interviewed and operated informants, executed search warrants, arrested, and interviewed subjects involved in the smuggling and distribution of controlled substances, conducted physical surveillance, and utilized electronic surveillance. As a result of this and my training, I am familiar with investigations of Drug Trafficking Organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar

with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

## PURPOSE OF THIS DECLARATION

2. This declaration is submitted in support of a complaint *in rem* for forfeiture of the property located at 1190 27th Avenue, Sweet Home, Oregon 97386

PARCEL I:

PARCEL 2, ACCORDING TO PARTITION PLAT NO. 1998-10, IN THE CITY OF SWEET HOME, FILED MARCH 9, 1998, RECORDS OF THE COUNTY OF LINN AND STATE OF OREGON.

PARCEL II:

PARCEL 1, ACCORDING TO PARTITION PLAT NO. 1998-10, IN THE CITY OF SWEET HOME, FILED MARCH 9, 1998, RECORDS OF THE COUNTY OF LINN AND STATE OF OREGON

(hereinafter "Subject Property").

3. In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe, that the Subject Property was used or intended to be used to facilitate the illegal distribution of controlled substances, in violation of 21 U.S.C. §§ 841, 846, and 856, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

4. The facts in this declaration come from my personal observations, my training and experience and information obtained from other agents and officers. This declaration is for the limited purpose of establishing probable cause. Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

## REAL PROPERTY ASSESSMENT REPORT

### Subject Property

5.  The Real Property Assessment Report lists Jasmine Magdaleno as the owner of the Subject Property with the Situs address listed as 1190 27th Avenue, Sweet Home, OR 97386. The mailing address for Magdaleno is 1190 27th Avenue, Sweet Home, OR 97386. The assessment shows the home makes up 1,404 square feet. The acreage on the report shows that this structure sits on .20 acres.

### SUMMARY OF THE INVESTIGATION

6.  Linn Interagency Narcotics Enforcement (LINE) task force has had multiple investigations into Eric McKnight (hereinafter "McKnight") and served four separate search warrants at the Subject Property, which is also McKnight's residence, since 2015. Each time a search warrant has been served, the Subject Property has become more fortified (steel doors/frames, fences, reinforced gates, steel over windows, etc.) On a previous warrant, McKnight was able to flush evidence down the toilet before law enforcement was able to make entry, which he attempted and somewhat successfully did again during the most recent search warrant. During the most recent investigation, LINE made multiple controlled purchases from McKnight for both methamphetamine and fentanyl. LINE believed that another person (Gerald Perrien hereinafter "Perrien") was storing drugs for McKnight so he did not need to store them at the Subject Property. LINE applied for and was granted state of Oregon search warrants for both Perrien's residence, and McKnight's residence, the Subject Property. Both residences are located in Sweet Home and minutes apart from each other. At the Subject Property, law enforcement seized methamphetamine, pills containing fentanyl, fentanyl powder, and heroin. At Perrien's residence, law enforcement found the same, but larger amounts. The Subject

Property is located within 1000 feet of the Hawthorne Elementary School.

## FACTS

7. In 2015, a state of Oregon search warrant was executed at the Subject Property. At the time, detectives had been investigating McKnight for a few months. A detective who was present at the search warrant in 2015 informed current LINE investigators that the subject property had surveillance cameras, was heavily fortified and it took the Linn Regional SWAT team approximately half of an hour to enter the residence due to steel doors with bars into the floor and ceiling to prevent entry. The detective also told investigators that controlled substances and evidence of delivery were located and it was believed that McKnight was able to destroy large amounts of methamphetamine (based on packaging materials) during the approximate 30 minutes it took SWAT to make entry. McKnight's toilet was removed from the floor by investigators and a large plastic bag was located within the toilet's drainpipe, which had possibly contained methamphetamine. Over $50,000 in U.S. currency was seized during the search warrant.

8. In early 2018, LINE investigated McKnight and conducted controlled purchases of methamphetamine from him. The first controlled purchased during this investigation occurred at the Subject Property, law enforcement used a Confidential Source ("CS1") and McKnight used a middleman. Both the CS1 and the middleman went to the Subject Property. During another controlled purchase of methamphetamine, LINE observed the CS1 and middleman meet, then observed the middleman and McKnight meet. During the meeting with McKnight, law enforcement observed McKnight give the drugs to the middleman, then observed the middleman give the drugs to the CS1. Jasmine Magdaleno (hereinafter "Magdaleno") drove McKnight to sell the methamphetamine.

9.     Based on the 2018 investigation, another state of Oregon search warrant was executed that year.  During the interview, McKnight admitted his cellphone would contain messages consistent with him selling and purchasing drugs, however only a small amount of methamphetamine was located and seized as a result of the warrant.  Later, detectives were informed by other sources that McKnight no longer kept drugs at the Subject Property because of a previous search warrant served at the location.

10.    In September 2021, LINE task force members responded to the fatal overdose of Kevin Mark Mahlstedt (hereinafter "Mahlstedt") in Linn County, Oregon.  Paraphernalia located in Mahlstedt's room tested positive for fentanyl through the Oregon State Police (OSP) Criminal Laboratory. Mahlstedt's toxicology was also tested through the OSP Criminal Laboratory and showed "acute fentanyl and fluorofentanyl" in Mahlstedt's body.  Mahlstedt's source of the fentanyl was identified as James David Hackworth (hereinafter "Hackworth") of Sweet Home, Oregon.  During LINE's investigation of Hackworth, detectives learned that Hackworth sourced the deadly fentanyl from James Randall Ogle (hereinafter "Ogle") in Linn County, Oregon.  Following the arrest of Ogle, Ogle told investigators that McKnight was selling fentanyl, carfentanil, methamphetamine, and heroin.

11.    Ogle described McKnight's residence, which was consistent with the Subject Property.  Ogle stated he has been buying fentanyl and heroin from McKnight for a while and had recently bought from him (April of 2022).  Ogle stated that he had seen "pounds" of fentanyl in McKnight's bedroom that were in a brick form in vacuum-sealed bags.  Ogle also stated that McKnight had "pounds of meth (methamphetamine) and black tar (heroin) right next to him." Ogle stated that McKnight has people in and out of the Subject Property who are buying controlled substances.  Ogle could not remember if the substance he sold to Hackworth (which

caused the overdose death of Mahlstedt) was a substance he bought from McKnight or someone else.

12. In early January 2023, LINE detectives spoke with an individual who wished to work as a confidential source (hereinafter "CS2") in exchange for monetary gains. CS2 told detectives the following about a drug dealer in Linn County, Oregon, "Eric Mc, Mc ... something" is in Sweet Home, Oregon on 27th Avenue. CS2 said that McKnight's wife is "Jasmine Magdaleno" and McKnight put the house in his wife's name so law enforcement would not seize it. CS2 was at the Subject Property in early 2023 and observed in McKnight's room, five pounds of methamphetamine and several fentanyl pills. CS2 also observed a block of chalky substance (suspected fentanyl powder) and a block of black tar substance (suspected heroin). McKnight told CS2 he re-ups on controlled substances every few days. While CS2 was at the Subject Property, CS2 noticed multiple people coming and going associated with controlled substance dealings. CS2 also saw McKnight with a large amount of currency and McKnight bragged about not getting caught by law enforcement.

13. Later that month, LINE again met with CS2. CS2 was shown photographs of McKnight and Magdaleno and confirmed those were the individuals he/she had been speaking about. CS2 stated McKnight and Magdaleno both reside at the Subject Property but was unsure if they were in a relationship as they both have their own rooms at the Subject Property. CS2 described McKnight's bedroom at the Subject Property as being in the southern portion of the residence which was consistent with the 2015 investigation, 2018 investigation, and what Ogle described to investigators. CS2 stated both McKnight and Magdaleno use controlled substances but was unsure what Magdaleno's involvement was in regard to selling controlled substances. CS2 said that based on the Subject Property and McKnight's blatant controlled substance

dealings, Magdaleno would be well aware of the criminal activity occurring within the Subject Property.

14.     A Computerized Criminal History (CCH) showed that CS2 is a convicted felon; investigators noted convictions for the following crimes: Burglary, Possession of Stolen Property, Controlled Substance Offenses, Assault, and Possession of Weapons. CS2 had no arrests for perjury or false information to police, nor were there any other crimes involving dishonesty or deception.

15.     In January of 2023, investigators drove by the Subject Property and noted the front portion of the property had a tall wooden fence and there were steel bars covering the windows. Also noted was the front door still had an outward swinging security door and beyond that appeared to be a steel front door. Based on previous investigations, it was apparent that McKnight had made even further fortification efforts to keep law enforcement from entering the property and residence in a timely manner. CS2 stated that a white male adult resides in a trailer on the property who uses methamphetamine. Both McKnight and Magdaleno have previous controlled substance arrests.

16.     Later that month, investigators met with CS2 and directed CS2 to contact McKnight in order to make another controlled purchase from him, this time for fentanyl. Investigators conducted surveillance as CS2 met with McKnight at the Subject Property and McKnight opened the gate for CS2. Following the controlled purchase CS2 turned over a plastic bag containing suspected fentanyl powder. CS2 stated McKnight was in possession of several pounds of methamphetamine and McKnight already had the purchased fentanyl packaged up in a baggie and handed it straight to CS2. CS2 stated McKnight had a large amount of currency in his hand, which CS2 estimated to be around $20,000. Investigators know, based on the

investigation that McKnight does not have a legitimate method of employment and this bulk currency is believed to be from selling controlled substances.

17.     That same month, Albany Police Department arrested someone who possessed several ounces of methamphetamine and claimed that the methamphetamine was purchased from McKnight at the Subject Property the previous day and that McKnight powers the residence with a generator and thinks McKnight is living off the grid.  This person wanted to provide information to law enforcement for consideration on their own charges and will be referred to hereinafter as "SOI1."   SOI1 said that McKnight has sold them controlled substances hundreds of times and has seen McKnight in possession of several pounds of fentanyl.  SOI1 told investigators that McKnight sells methamphetamine and fentanyl.   SOI1 said that McKnight gets 30-40 pounds of methamphetamine at a time from his California source of supply.  The SOI1 said that McKnight still has the residence fortified with a steel door, bars on the windows, surveillance cameras and has a television in his room dedicated to watching the surveillance cameras.

18.     In February 2023, another individual was arrested who wished to provide information to LINE in exchange for consideration on his/her own charges and will be referred to hereinafter as "SOI2."  SOI2 told LINE investigators that they have bought fentanyl powder from McKnight several times, all of which occurred at the Subject Property.  SOI2 said that they had recently been at the Subject Property and McKnight had approximately $100,000 in U.S. currency and a kilogram of fentanyl.  A few weeks prior to that, SOI2 said they had been at the Subject Property and observed multiple rifles and pistols.

19.     In February 2023, LINE conducted another controlled purchase of methamphetamine from McKnight.  Prior to the operation happening, surveillance units

observed a vehicle arrive at the Subject Property and a white male wearing a Carhartt jacket get out of the vehicle and go into the residence. Approximately 20 minutes later, the male in the Carhartt jacket left the Subject Property in a Toyota Camry that was registered to Magdaleno with an address of 1190 27th Avenue, Sweet Home, Oregon, right around the same time CS2 was arriving to conduct the controlled purchase of methamphetamine. Ultimately this vehicle and the male in the Carhartt jacket were located minutes later parked at an apartment building, located at 925 Long Street, Sweet Home, Oregon. Using law enforcement databases, the male in the Carhartt jacket was identified as Perrien. During the investigation described below, Perrien and his residence were identified as a storage location for McKnight's controlled substances. I know from my training and experience that this occurs so McKnight is not in possession of controlled substances if/when law enforcement serve an additional search warrant at his residence.

20. Shortly after arriving, law enforcement observed CS2 leave the Subject Property having successfully purchased methamphetamine.. Investigators met with CS2 afterwards and CS2 told them that McKnight was in the bedroom area with the methamphetamine, which was already packaged up. Based on the CS2's interaction with McKnight, he/she believed that McKnight did not keep much methamphetamine at the residence and believed that Perrien brings drugs to the Subject Property as needed. CS2 thought this because within the last month and a half, CS2 had been at the Subject Property when a customer showed up to purchase controlled substances. During that incident, the customer was sold controlled substances from McKnight while Perrien was present and believed Perrien was storing controlled substances for McKnight based on conversations CS2 overheard. This was the second of four controlled purchases LINE conducted from McKnight in 2023.

**Declaration of Peter Ardissono**  Exhibit A Page 9

21. Shortly after the controlled purchase, LINE detectives met with CS2 and CS2 informed detectives that they were at the Subject Property and Perrien arrived in the Toyota mentioned above. CS2 said Perrien gave controlled substances to McKnight who was going to sell them to a customer. CS2 said that McKnight was upset because Perrien had not brought the correct amount of drugs and sent him away. Perrien left and then came back within the hour with more drugs. CS2 also told investigators that McKnight had recently got over ten pounds of methamphetamine from his source of supply.

22. In March 2023, a third controlled purchase of methamphetamine was conducted from McKnight at the Subject Property. During the controlled purchase, surveillance units observed Perrien enter the residence of the Subject Property carrying something in his arms. CS2 entered the residence and exited shortly after. Surveillance units observed Perrien exit the residence moments after CS2. CS2 advised that when he/she arrived at McKnight's gate, Perrien was on the inside of the gate and directed CS2 which gate to open to enter the property. CS2 stated that McKnight was in his bedroom when the controlled purchase occurred and stated that inside the bedroom was a backpack, which contained multiple pounds of methamphetamine, and a brick of white substance believed to be fentanyl.

23. In April 2023, LINE detectives met with CS2, and he/she stated that he/she was recently at Subject Property and McKnight had been in possession of multiple controlled substances, including counterfeit pills, powdered fentanyl, heroin, and methamphetamine and over $10,000 in U.S. currency.

24. In May 2023, LINE conducted a fourth controlled purchase from McKnight at the Subject Property, this time for fentanyl. Within minutes of CS2 arriving at the Subject Property, surveillance units observed Perrien exit his own residence, carrying a black backpack.

Surveillance observed Perrien get into the previously mentioned Toyota Camry and drive straight to the Subject Property. CS2 and Perrien spoke briefly and then Perrien left the Subject Property. CS2 successfully purchased counterfeit pills containing fentanyl from McKnight at the Subject Property. CS2 said when he/she arrived at the Subject Property McKnight opened the gate. CS2 went to McKnight's bedroom, but McKnight did not have any pills, so he placed a telephone call to Perrien, who arrived minutes later and handed the pills to McKnight, who then gave them to CS2.

## SEARCH WARRANT AT PERRIEN'S

25. On May 10, 2023, law enforcement served state of Oregon search warrants at the Subject Property and at Perrien's residence (925 Long Street #C, Sweet Home, OR) simultaneously. Perrien was detained at his residence in Sweet Home, Oregon, and after having been advised of his rights per Miranda, agreed to speak with investigators and was not promised anything in regard to possible criminal charges. Perrien claimed that McKnight's controlled substances were located in the safe at his residence and he would deliver them to McKnight when McKnight told him to. Perrien admitted that he had his own personal drugs in a black backpack, also in the house, but kept them separate from McKnight's.

26. Law enforcement located and seized approximately 307.50 grams of blue M-30 fentanyl pills, 919.50 grams of heroin, 564.40 grams of methamphetamine, and 714 grams of fentanyl powder from the safe at Perrien's residence. Perrien claimed these drugs belonged to McKnight.

27. In the backpack, law enforcement located and seized approximately 1.3 grams of cocaine, 69.5 grams of meth, 3.6 grams of fentanyl pills, 54.60 grams of heroin, and 8.50 grams unknown pills. Perrien claimed these drugs belonged to him.

28. During the interview, Perrien said that he is a friend/acquaintance of McKnight and McKnight employs him in his unlawful delivery of controlled substances business. Perrien said McKnight calls him and asks him to hold controlled substances or has someone bring him controlled substances to hold. Perrien said this has been the arrangement for the past three or four months. Perrien said he retrieves controlled substances from McKnight or McKnight has someone bring him controlled substances two to three times a week. Perrien said McKnight has him hold fentanyl in powder and pill form. He estimated the powder at 1-2 pounds and pills to be around 4000. Perrien said he also holds methamphetamine and heroin, 1-2 pounds of each at a time. Perrien said he last brought controlled substances for McKnight about one week prior. Perrien said when the controlled substances come to him, they are already separated into smaller amounts. Perrien stated that McKnight had, in the past compensated him, but he had not been paid in a while. Perrien said he was being taken advantage of; however, he was able to purchase what he needed from McKnight. Perrien said he buys methamphetamine, 1-2 ounces a time, from McKnight a couple times a month and he pays $200 an ounce. Perrien said he uses methamphetamine as well as selling to a few people. Perrien said the car that he drives, which is registered to Magdaleno, was partial compensation and part purchase from McKnight.

29. Perrien said McKnight calls him when he needs what is stored at his apartment. Perrien said McKnight will request specifically what he needs and Perrien drives it to him, or someone drives to Perrien to pick it up. Perrien said it is more common for him to go to McKnight. Perrien said that he is not the only person that holds controlled substances for McKnight.

/ / /

/ / /

**Declaration of Peter Ardissono**                                                                                         Exhibit A Page 12

## SEARCH WARRANT AT THE SUBJECT PROPERTY

30. Also on May 10, 2023, during the execution of a search warrant at the Subject Property, law enforcement located and detained McKnight and Magdaleno's mother (Trena Magdaleno, hereinafter "Trena"), who had recently moved into the residence. During the service of the warrant, law enforcement located and seized approximately 354.6 grams of methamphetamine (129.7 of which was removed from the toilet in McKnight's bathroom), 42.8 grams of powdered fentanyl, 24.1 grams of heroin, 48.1 grams of M-30 pills, 35 yellow counterfeit R039 pills and approximately $10,430 cash in U.S. currency. Trena was advised of her rights per Miranda and understood her rights. Trena admitted to being a methamphetamine user and stated there was possibly methamphetamine in her room. Trena stated that Magdaleno used to date McKnight but no longer does. She identified Magdaleno's room on the eastern side of the residence, where law enforcement located and seized a small amount of methamphetamine.

31. McKnight was advised of his rights per Miranda and acknowledged that he understood his rights. McKnight acknowledged there was fentanyl in his room and that he did not know how much methamphetamine he flushed down the toilet when law enforcement arrived. Law enforcement went through McKnight's phone in McKnight's presence, with his consent. Law enforcement asked McKnight about the people in his phone who had contacted him that day via text message. McKnight admitted to selling controlled substances to all five of those contacts recently.

## CONCLUSION

32. The evidence in this declaration provides probable cause to believe, and I do believe that the Subject Property was used or intended to be used to facilitate the illegal

distribution of controlled substances, in violation of 21 U.S.C. §§ 841, 846, and 856, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 29th day of November 2023.

s/ *Peter Ardissono*
Peter Ardissono
Special Agent
Drug Enforcement Administration